1  **BECK & LEE TRIAL LAWYERS**
   JARED H. BECK (CA Bar No. 233743)
2  ELIZABETH LEE BECK (CA Bar No. 233742)
   BEVERLY VIRUES
3  FL Bar No. 123713
   Corporate Park at Kendall
4  12485 SW 137th Ave., Suite 205
5  Miami, Florida 33186
   Tel:    305-234-2060
6  Fax:    786-664-3334

7  **CULLIN O'BRIEN LAW, P.A.**
   CULLIN O'BRIEN
8  FL Bar No. 597341
9  6541 NE 21st Way
   Fort Lauderdale, Florida 33108
10 Tel:    561-676-6370
   Fax:    561-320-0285
11
12 Counsel for Plaintiff and Putative Class

13
                    UNITED STATES DISTRICT COURT
14
                    NORTHERN DISTRICT OF CALIFORNIA
15

16 | | |
   |---|---|
17 | BRENDAN PEACOCK, on Behalf of Himself, and All Others Similarly Situated, | Case No: _____ |
18 | | Pleading Type: Class Action |
19 | Plaintiff, | **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |
20 | v. | |
21 | THE 21ST AMENDMENT BREWERY CAFE, LLC, | |
22 | | |
23 | Defendant. | |

**Nature of the Case**

1. Defendant, The 21st Amendment Brewery Cafe, LLC ("Defendant") is falsely creating the impression in the minds of its consumers that its beer products are exclusively brewed in the Bay Area of California, when, in fact some of the beer is brewed in Minnesota. As a result of this false advertising, Plaintiff Brendan Peacock ("Plaintiff") sues Defendant on behalf of himself and the putative class of purchasers of Defendant's beer products, seeking damages and injunctive relief.

**Jurisdiction and Venue**

2. This Court has original jurisdiction under 28 U.S.C. § 1332(d)(2) (the Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, and there is diversity of citizenship between the proposed class members and Defendant.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff and Defendant reside in this District; many of the acts and transactions giving rise to this action occurred in this District; and Defendant (1) is authorized to conduct business in this District and has intentionally availed itself of the laws and markets of this District through the promotion, marketing, distribution, and sale of beer in this District; and (2) is subject to personal jurisdiction in this District.

**Parties**

4. Plaintiff Brendan Peacock is a resident of California.

5. Defendant, The 21st Amendment Brewery Cafe, LLC, is a California limited liability company with its principal place of business in San Leandro, California.

**Allegations**

6. Defendant sells beer products under its trademark, 21st Amendment.

7. Defendant markets and sells the beer in order to create the impression in the minds of consumers that the beer as being exclusively brewed in the Bay Area of California. Defendant does this by, inter alia, using a map depicted on the packaging of the beer, with an "X" designating where the "brewery" is located:



8. Defendant also creates the impression in the minds of consumers that the beer was being exclusively brewed in the Bay Area of California, through statements on its websites and in other media. For instance, Defendant's website presents itself as a back-to-roots, local brewery:

**The Company**

*In 2000, Nico Freccia and Shaun O'Sullivan founded the 21st Amendment Brewery in San Francisco's historic South Park neighborhood.* The popular brewpub is now at the heart of the new city center, just south of the financial district and only two blocks from the San Francisco Giants baseball park. In addition to eight rotating taps of multiple award-winning hand-crafted house beers, the pub has been voted "Best Brewpub", "Best Burger" and "Best Happy Hour" by the San Francisco press.

Freccia and O'Sullivan met in early 1995 in San Francisco. Both had just moved from southern California to the Bay area when they heard the calling of beer. O'Sullivan, a former photographer and paralegal, "traded his suits for boots and was saved by beer". He moved to Berkeley and took a job as assistant brewer at the Triple Rock Brewery there. *Freccia, a writer, actor and, by extension, restaurant professional, was also an avid homebrewer*. Frustrated with the lack of beer culture in the L.A. area, he moved to San Francisco and began writing for the Celebrator Beer News, the west's largest beer publication. *Freccia and*

*O'Sullivan met, became friends and, while sitting together in a summer class on brewing science at UC Davis, hatched their plan for what would become the 21st Amendment.*

**What is the 21st Amendment?**

Around the turn of the 20th century, in the year 1900, there were thousands of small breweries operating across America. *When Freccia and O'Sullivan were researching old San Francisco breweries (trying to find a cool name for their new brewery), what really made an impact was the discovery that there were about 40 breweries operating just within the city limits of San Francisco (by comparison, today there are eight with a population more than double what it was in 1900). They realized that the brewery captured the essence of the neighborhoods of San Francisco*. *They were the local gathering places. Places to exchange ideas, debate politics and philosophy. Places for families to come together on weekends. Places that provided something unique—hand crafted beer that was different at every brewery and that defined the taste of a neighborhood.*

In 1920, Prohibition wiped out this culture and put the "local" out of business. For 13 years, social interaction was largely driven underground, to the speakeasies, where regular citizens became a nation of outlaws.

*But with the passage of the 21st Amendment, repealing Prohibition, we, as a society, were able to begin the slow climb back to reclaiming the essence of the neighborhood gathering place. At the 21st Amendment, they celebrate the culture of the great breweries of old, making unique, hand crafted beers, great food, and providing a comfortable, welcoming atmosphere that invites conversation, interaction and a sense of community.*

http://21st-amendment.com/the-company (last visited April 6, 2017) (emphases added).

9. The statements and impressions that Defendant's beer is exclusively brewed in the Bay Area of California are false, deceptive, and misleading. The beer is not exclusively brewed in the Bay Area of California. As Defendant states, "If the four digit code [for the beer] starts with an S, then that signifies that [the beer] was brewed in San Leandro." Otherwise, it is brewed in Minnesota.

**Plaintiff's Allegations**

10. In or about July 2016, Plaintiff purchased 21st Amendment "Brew Free! or Die IPA" and "Hell or High Watermelon Wheat Beer" from BevMo, 3106 Arden Way, Sacramento, California 95825 and Total Wine & More, 2121 Arden Way Sacramento, California, 95825.

Prior to Plaintiff's purchase of the beer, Plaintiff was exposed to Defendant's marketing messaging and impressions that the beer is exclusively brewed in the Bay Area of California, including the following "map" imagery depicted below:





Additionally, each of the cans purchased by Plaintiff states that the beer is "Brewed & Canned by 21st Amendment Brewery, San Leandro, CA."

11. The beer Plaintiff purchased was not exclusively brewed in the Bay Area of California given the code codes on bottom of the cans, depicted below, which start with a "C" not an "S":



1  Thus, because according to Defendant, "If the four digit code [for the beer] starts with an S, then
2  that signifies that [the beer] was brewed in San Leandro," and because Plaintiff's beer code start
3  with a "C," the beer he purchased was not brewed in the Bay Area of California. It was brewed
4  in Minnesota. Plaintiff purchased the beer because of and in reliance on these marketing
5  messages. Plaintiff was deceived by, affected by, and harmed by Defendant's false advertising.
6  Had Plaintiff known that Defendant's marketing messages were false, Plaintiff would not have
7  purchased the beer. Plaintiff paid a price premium for the beer compared to, *inter alia*, other
8  beer and related goods.

## Class Action Allegations

10  12. Plaintiff seeks to certify a class of all purchasers in the United States of 21st
11  Amendment brand beer. This action is properly maintainable as a class action under Rule 23.

12  13. The Class is so numerous that joinder of all members is impracticable.

13  14. There are questions of law and fact which are common to the Class and which
14  predominate over questions affecting any individual Class member. The common questions
15  include, *inter alia*, the following: Whether the Defendant falsely markets and advertises where
16  the beer is brewed to the Class.

17  15. Plaintiff's claims are typical of the claims of the other members of the Class and
18  Plaintiff does not have any interests adverse to the Class.

19  16. Plaintiff is an adequate representative of the Class, has retained competent
20  counsel experienced in litigation of this nature and will fairly and adequately protect the interests
21  of the Class.

22  17. The prosecution of separate actions by individual members of the Class would
23  create a risk of inconsistent or varying adjudications with respect to individual members of the
24  Class which would establish incompatible standards of conduct for the party opposing the Class.

25  18. Plaintiff anticipates that there will be no difficulty in the management of this
26  litigation. A class action is superior to other available methods for the fair and efficient
27  adjudication of this controversy.

28

6
*Peacock v. The 21st Amendment Brewery Cafe*, Case No. _____
CLASS ACTION COMPLAINT

19. Defendant acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

### Count I
### For Violation of the UCL

20. Plaintiff repeats and incorporates by reference the allegations in Paragraphs 1 through 19 set forth above as if fully set forth herein.

21. Cal. Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

22. The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute "unlawful" business acts and practices in that Defendant's conduct violates the Consumer Legal Remedies Act, and the California Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), which incorporates all the regulations and requirements of the Federal Food, Drug, and Cosmetic Act. Specifically, Defendant acted in contravention of the following Sherman Law provisions:

- § 110100 (adopting all FDA regulations as state regulations);
- § 110290 ("In determining whether the labeling or advertisement of a food . . . is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these shall be taken into account. The extent that the labeling or advertising fails to reveal facts concerning the food . . . or consequences of customary use of the food . . . shall also be considered.");
- § 110390 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food . . . that is falsely advertised.");
- § 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.");
- § 110400 ("it is unlawful for any person to receive in commerce any food . . . that is falsely advertised or to deliver or proffer for deliver any such food . . . . ");
- § 110660 ("Any food is misbranded if its labeling is false or misleading in any particular.");

- § 110670 ("Any food is misbranded if its labeling does not confirm with the requirements for nutrient content or health claims as set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the federal act and the regulations adopted pursuant thereto.");
- § 110680 ("Any food is misbranded if its labeling or packaging does not conform to the requirements of Chapter 4 (commencing with Section 110290).");
- § 110705 ("Any food is misbranded if any word, statement, or other information required pursuant to this part to appear on the label or labeling is not prominently placed upon the label or labeling and in terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use.");
- § 110760 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.");
- § 110765 ("It is unlawful for any person to misbrand any food."); and
- § 110770 ("It is unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food.").

23. By violating the California Unfair Competition Law, Defendant also violated the common law of unfair competition.

24. Defendant leveraged its deception to induce Plaintiff and members of the Class to buy products that were of lesser value and quality than advertised, including but not limited to being of a different origin.

25. Plaintiff suffered injury in fact and lost money or property as a result of Defendant's deceptive advertising: he was denied the benefit of the bargain in purchasing the beer. Had Plaintiff been aware of Defendant's false and misleading advertising tactics, he would not have purchased the beer. Moreover, had Defendant not engaged in the false and misleading advertising tactics, Plaintiff and the members of the Class would have paid less for the beer because Defendant would not have been able to charge them a premium for the product.

26.     The false and misleading labeling and advertising of beer, as alleged herein, constitutes 'unfair" business acts and practices because such conduct is immoral, unscrupulous, and offends public policy.  Further, the gravity of Defendant's conduct outweighs any conceivable benefit of such conduct.

27.     The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute "fraudulent" business acts and practices because Defendant's conduct is false and misleading to Plaintiff, Class members, and the general public.

28.     In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

29.     Plaintiff also seeks an order for the restitution of all monies from the sale of the beer which were unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition.

## Count II
## For Violation of the CLRA

30.     Plaintiff repeats and incorporates by reference the allegations in Paragraphs 1 through 19 set forth above as if fully set forth herein.

31.     The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

32.     Defendant's policies, acts, and practices were designed to, and did, result in the purchase and use of the products primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

- § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;
- § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;
- § 1770(a)(9): advertising goods with intent not to sell them as advertised;

9

*Peacock v. The 21st Amendment Brewery Cafe*, Case No. _____
CLASS ACTION COMPLAINT

- § 1770(a)(6): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

33.  As a result, Plaintiff and the Class members have suffered irreparable harm and are entitled to damages and injunctive relief pursuant to Cal. Civ. Code § 1782.

34.  Plaintiff has complied with the notice and demand requirements of the CLRA, as set forth in California Civil Code § 1782, in conjunction with filing this action. Defendant failed to cure the problem after 30 days of the notice and discussions between the parties' counsel.

35.  Defendant's conduct described herein was longstanding, was done for profit as a deliberate corporate policy rather than an isolated incident, and was morally wrong, fraudulent, callous, and oppressive.  Plaintiff seeks injunctive relief and damages, including but not limited to punitive damages.

## Prayer for Relief

WHEREFORE, Plaintiff prays for judgment and relief against Defendant as follows:

A.  that the Court certify the Class under Rule 23 of the Federal Rules of Civil Procedure and appoint Plaintiff as Class Representative and his attorneys as Class Counsel to represent the members of the Class;

B.  that the Court declare that Defendant's conduct violates the statutes referenced herein;

C.  that the Court preliminarily and permanently enjoin Defendant from conducting its business through the unlawful, unfair, or fraudulent business acts or practices, untrue, and misleading labeling and marketing and other violations of law described in this Complaint;

D.  that the Court order Defendant to conduct a corrective advertising and information campaign advising consumers that the beer do not have the characteristics, uses, benefits, and quality Defendant has claimed;

E.  that the Court order Defendant to implement whatever measures are necessary to remedy the unlawful, unfair, or fraudulent business acts or practices, untrue and misleading advertising, and other violations of law described in this Complaint;

F. that the Court order Defendant to notify each and every individual and/or business who purchased the beer of the pendency of the claims in this action in order to give such individuals and businesses an opportunity to obtain restitution from Defendant;

G. that the Court order Defendant to pay restitution to restore to all affected persons all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or a fraudulent business act or practice, untrue or misleading labeling, advertising, and marketing, plus pre- and post-judgment interest thereon;

H. that the Court order Defendant to disgorge all monies wrongfully obtained and all revenues and profits derived by Defendant as a result of its acts or practices as alleged in this Complaint;

I. that the Court award damages to Plaintiff and the Class, including punitive damages;

J. the common fund doctrine, and/or any other appropriate legal theory; and

K. that the Court grant such other and further relief as may be just and proper.

**Demand for Jury Trial**

Plaintiff hereby demands trial by jury in this action on all issues so triable.

DATED: April 6, 2017                    Respectfully Submitted,


/s/ Jared H. Beck
Jared H. Beck
Counsel for Plaintiff and Putative Class