JARED H. BECK (CA Bar No. 233743)
ELIZABETH LEE BECK (CA Bar No. 233742)
BEVERLY VIRUES
FL Bar No. 123713
jared@beckandlee.com
elizabeth@beckandlee.com
beverly@beckandlee.com
**BECK & LEE TRIAL LAWYERS**
Corporate Park at Kendall
12485 SW 137th Ave., Suite 205
Miami, Florida 33186
Tel:      305-234-2060
Fax:     786-664-3334

CULLIN O'BRIEN
FL Bar No. 597341
cullin@cullinobrienlaw.com
**CULLIN O'BRIEN LAW, P.A.**
6541 NE 21st Way
Fort Lauderdale, Florida 33108
Tel:      561-676-6370
Fax:     561-320-0285

Counsel for Plaintiff and Putative Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDAN PEACOCK, on Behalf of Himself, and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> THE 21ST AMENDMENT BREWERY CAFE, LLC, <br><br> Defendant. | Case No: 3:17-cv-01918 <br><br> **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** <br><br> Hearing Date:      November 2, 2017 <br> Time:                    2:00 p.m. <br> Courtroom:          9 <br> Judge: Hon.        Jon S. Tigar <br> Action Filed:       August 14, 2017 |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................1

II.     PLAINTIFF STATES A CLAIM UNDER THE UCL.......................................4

      A.     The Contours of a UCL Claim............................................................4

      B.     The Contours of a CLRA Claim .........................................................5

III.    DEFENDANT'S FAILED REQUEST FOR DISMISSAL UNDER RULE 12(b)(6) ..........................................................................................................5

      A.     Standard of Review.............................................................................6

      B.     There Are Actionable Misrepresentations and Omissions under the UCL and the CLRA ....................................................................................6

           1.     Plaintiff Expressly Alleges that Defendant Falsely Portrays its Beer as Being Exclusively Brewed in the Bay Area ...........................7

           2.     Judge Freeman's Analysis in *Broomfield*, Which Has Nearly-Identical Facts, Is Instructive as to Why Plaintiff's Allegations Here Are Sufficient to State a Cause of Action for False Advertising Under the UCL and CLRA ....................................8

                a.     This Court Must Employ the Reasonable Consumer Test: Would a Reasonable Consumer Believe that Defendant' Beer Products Are Exclusively Brewed in the Bay Area?..............9

                b.     At this Pleading Stage, this Court's Objective Application of the Reasonable Consumer Test Requires this Court to Find that Plaintiff Has Set Forth Plausible Allegations of False Advertising ...............................................................9

           3.     The Beer Cases Defendant Cites Have No Bearing Here, Because those Cases Did Not Involve Anything Like the Deceptive "X" Marks the Spot Map of the Bay Area on the Product Packaging and the False Statements on the Beer Cans, "Brewed & Canned by 21st Amendment Brewery, San Leandro, CA." ................................11

      C.     There Is No Preemption Nor Safe Harbor Regarding Defendant's False Advertising............................................................................................11

      D.     Defendant's Argument Regarding the CLRA Demand Letter Has No Merit...................................................................................................15

      E.     Defendant's "Standing" Argument Has No Merit .................................15

**Page**

1.   The Integrity of Our Current Civilization Depends Upon Allowing
     Consumers to Come into Court to Stop False Advertising........................16

2.   Defendant's Standing Argument Is Not Procedurally Proper,
     Especially Since it Is a Thinly-Veiled Attack on Class Certification........17

IV.   CONCLUSION..............................................................................................18

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005) ................................................................ 14

*Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60 (1983) ........................................................ 16

*Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386 (E.D.N.Y. 2017) ...................................... 11

*Broomfield v. Craft Brew Alliance, Inc.*, No. 17-cv-01027-BLF, 2017 WL 3838453
   (N.D. Cal. Sept. 1, 2017) .......................................................................... *passim*

*Carney v. Verizon Wireless Telecom, Inc.*, 2010 WL 1947635 (S.D. Cal. May 13,
   2010) ................................................................................................ 14

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (Cal.
   1999) ................................................................................................. 5

*Clancy v. The Bromley Tea Company*, 308 F.R.D. 564 (N.D. Cal. 2013) ................................... 17

*Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy,* 4 Cal. App. 4th 963
   (1992) ............................................................................................ 4, 16

*Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163 (2000) .................................... 5

*Dumas v. Diageo PLC*, No. 15-cv-1681, 2016 WL 1367511 (S.D. Cal. April 6, 2016) .......... 9, 11

*Gertz v. Robert Welch*, 418 U.S. 323 (1974) ............................................................ 16

*Henderson v. Gruma Corp.*, No. CV 10–04173 AHM (AJWx), 2011 WL 1362188
   (C.D. Cal. Apr. 11, 2011) ........................................................................... 16

*Hofmann v. Fifth Generation, Inc.*, No. 14-cv-2569-JM-LB, 2015 WL5440330 (S.D.
   Cal. Mar. 18, 2015) ................................................................................. 14

*In re Tobacco II Cases*, 207 P.3d 20 (Cal. 2009) ....................................................... 16

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009) ...................................................... 4, 5

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices and Prods. Liab.
   Litig.*, 890 F. Supp. 2d 1210 (C.D. Cal. 2011) ..................................................... 18

*Kagan v. Gibraltar Sav. & Loan Ass'n*, 35 Cal. 3d 582, 593, 200 Cal. Rptr. 38 (1984) ............... 6

*Klein v. Earth Elements Inc.*, 59 Cal. App. 4th 965 (Cal. Ct. App. 1997) ................................ 5

*Kwikset Corp. v. Superior Court*, 246 P.3d 877 (Cal. 2001) .......................................... 3, 17

**Page**

*Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115 (2007) ................... 9

*Marty et al. v. Anheuser-Busch Companies, LLC*, Case No. 13-cv-23656 (S.D. Fla.) ............. 3, 10

*McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457 (2006) ............................................ 4

*Nowrouzi v. Maker's Mark Distillery, Inc.*, No. 14CV2885 JAH, 2015 WL 4523551
       (S.D. Cal. Jul. 27, 2015) ........................................................................................ 14

*Paduano v. Am. Honda Motor Co., Inc.*, 169 Cal. App. 4th 1453 (Cal. Ct. App. 2009) ............... 5

*Parent v. MillerCoors LLC,* No. 3:15-CV-1204-GPCWVG, 2016 WL 3348818 (S.D.
       Cal. June 16, 2016) .............................................................................................. 11

*Ruszecki v. Nelson Bach USA Ltd.*, No. 12–cv–495–L(NLS) 2015 WL 6750980 (S.D.
       Cal. June 25, 2015) .............................................................................................. 15

*Saunders v. Super. Ct.*, 27 Cal. App. 4th 832 (Cal. Ct. App. 1994) ............................................ 5

*Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144 (2000) ............................................................. 14

*Senne v. Kansas City Royals Baseball Corp.*, 114 F.Supp.3d 906 (N.D. Cal. 2015) ................... 18

*Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212 (C.D. Cal. 2012)........................................ 17

*Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748
       (1976) .................................................................................................................. 16

*Williams v. Gerber Products, 552 F.3d 934* (9th Cir. 2008) ................................................. 9, 10

*Wyeth v. Levine*, 555 U.S. 555, 129 S. Ct. 1187 (2009) ........................................................ 14

**STATUTES**

27 CFR §7.25(a)(1) ...................................................................................... 12, 13, 14

Cal. Bus. & Prof. Code §§17200, *et seq.* ............................................................... *passim*

Cal. Civ. Code §1770(a) ....................................................................................... 5

Cal. Civ. Code. 1750, *et seq.*............................................................................... *passim*

**RULES**

Fed. R. Civ. P. 12(b)(6).......................................................................................... 6

Fed. R. Civ. P. 23 ............................................................................................... 18

**Page**

Fed. R. Civ. P. 23(c)(1)(C) ..................................................................................... 18

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Art. III, §2 ............................................................................ 16, 17, 18

Plaintiff Brendan Peacock ("Plaintiff") files this response in opposition to the motion to dismiss, [Dkt. Nos. 17], filed by defendant The 21st Amendment Brewery Cafe, LLC ("Defendant") and, accordingly states:

## I.       INTRODUCTION

This is a straightforward false advertising case regarding the origin of Defendant's beer products.  Defendant tells the public that its beer is exclusively brewed in the Bay Area when, in fact, its beer is also brewed in Minnesota.

Specifically, Defendant adorns its beer products with a map of the Bay Area with an "x" marked on it and the statement on the beer cans, "Brewed & Canned by 21st Amendment Brewery, San Leandro, CA."  The map on Defendant's products appear as follows:





[Dkt. No. 1, pg. 4].    These markers, as well as statements on Defendant's website, gives the public the impression that the Defendant's beer is somehow exclusively brewed in the Bay Area. However, in reality, Defendant's beer is also brewed Minnesota.[1]

As a result of Defendant's false advertising regarding the origin of its beer products, Plaintiff brings a class action against Defendant under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§17200, *et seq*., as well as under California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code. 1750, *et seq*., on behalf of all purchasers of the beer products.

---

[1]    Defendant contracted with Cold Spring Brewing Co. ("Cold Spring") in Minnesota.  At one point, purportedly 99.9% of Defendant's beer was brewed in Cold Spring.    *See* http://drinks.seriouseats.com/2012/04/behind-the-scenes-21st-amendment-brewery-san-francisco-tour-shaun-osullivan.html (last accessed Sept. 26, 2017).

Cold Spring has been variously called "the laughingstock of the beer industry," an "old brewery known to make kind of crappy beer," and its products were "low-brow lagers relegated to the back corner of liquor stores."    *See* http://tcbmag.com/news/articles/2013/cold-spring-brewing-has-a-reputation-to-maintain (last accessed September 26, 2017).

None of this is disclosed to consumers, whom Defendants induce to reasonably believe that Defendant's products are locally brewed, and who pay a premium price as a result.

Defendant seeks dismissal on the basis that this case is somehow "another make-weight, attorney-driven, noinjury lawsuit."[2]   [Dkt. No. 17, pg. 9].   Defendant fundamentally misunderstands the allegations and the law.   Corporations are not allowed to lie to the public on their product labels and then somehow claim that there is no harm.   The sale of a falsely advertised product is, in and of itself, a violation of the UCL and the CLRA.   *Kwikset Corp. v. Superior Court*, 246 P.3d 877 (Cal. 2001), 246 P.3d at 877 ("That increment, the extra money paid, is economic injury and affords the consumer standing to sue.").   As the California Supreme Court further explained in *Kwikset*:

> Simply stated: labels matter. The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source.

*Kwikset,* 246 P.3d at 889.

Nor is there any false advertising exception for beer companies.   Indeed, beer companies have settled false origin advertising claims like the false origin claim at issue here for substantial sums of money.[3]   Moreover, Judge Freeman's recent decision in *Broomfield v. Craft Brew*

---

[2]     Apart from the fact that such baseless accusations are entirely outside the scope of the contours of a motion to dismiss, it is not even clear what "attorney-driven" lawsuit even means, considering that access to the court system is for practical purposes nonexistent unless one has access to legal counsel. *See, e.g.*, "An Exit Interview With Richard Posner, Judicial Provocateur," New York Times, September 11, 2017 https://www.nytimes.com/2017/09/11/us/politics/judge-richard-posner-retirement.html (accessed September 26, 2017) (where noted jurist "suddenly realized" that "people without lawyers are mistreated by the legal system....most judges regard these people as kind of trash not worth the time of a federal judge.").

In any event, Plaintiff, a resident of Northern California and a consumer of craft beers, reached out to the Defendant as part of his layperson consumer's investigation, and thereafter sought legal counsel.  Plaintiff contacted Plaintiff's law firms, who agreed to represent him on this case.  All of these facts will be made apparent, and Defendant's unsubstantiated attacks on the record of Plaintiff and his counsel will be properly rebutted, if this court were to allow this action to proceed to discovery.

[3]     *See, e.g.*, *Marty et al. v. Anheuser-Busch Companies, LLC*, Case No. 13-cv-23656 (S.D. Fla.), http://www.wsj.com/articles/judge-approves-settlement-overbecks-beer-1445397277 (last visited, July 26, 2016) ("A U.S. magistrate judge in Miami gave final approval to an estimated $20 million settlement of a class-action lawsuit claiming that Anheuser-Busch InBev NV, the maker of Beck's, duped American consumers into believing that the St. Louis-brewed beer was an authentic German pilsner.")

*Alliance, Inc.*, No. 17-cv-01027-BLF, 2017 WL 3838453, at *1 (N.D. Cal. Sept. 1, 2017)*,* should be dispositive as to why Defendant's motion to dismiss this case has no merit.

In *Broomfield*, the plaintiffs alleged that the defendant's Kona Beer was falsely advertised as being exclusively brewed in Hawaii. *Broomfield*, 2017 WL 3838453, at *1-*7.  In a lengthy and thorough analysis, Judge Freeman rejected the exact same arguments for dismissal of the UCL and CLRA claims that Defendant makes here.  *Id.*  Judge Freeman held:

> [T]he Court finds that the Hawaiian address, the map of Hawaii identifying Kona's brewery on the Big Island, and the statement "visit our brewery and pubs whenever you are in Hawaii," are not mere puffery but are specific and measurable representations of fact that could deceive a reasonable consumer into believing that the six- and twelve-packs of Kona beer were brewed in Hawaii. . . . These representations go beyond those held to be non-actionable in Dumas, and they do more than evoke the "spirit" of Hawaii or indicate that the beer is "Hawaiian-style." Considered together in context, these statements and images amount to specific and measurable representations that could deceive consumers into believing that they were purchasing beer made in Kona, Hawaii at the specific brewery location listed and depicted on the package.

*Broomfield*, 2017 WL 3838453, at *6-*7.   Judge Freeman's analysis of the Kona beer defendant's motion to dismiss should be on all fours with how this Court treats Defendant's motion to dismiss here. Indeed, Judge Freeman distinguished some of the very same cases Defendant cites in support of dismissal here. *Broomfield*, 2017 WL 3838453, at *5-*8.

For the reasons more fully stated herein, Plaintiff respectfully asks this Court to deny Defendant's motion to dismiss.

## II.     PLAINTIFF STATES A CLAIM UNDER THE UCL

### A.     The Contours of a UCL Claim

Plaintiff alleges that Defendant has violated the UCL.   "[T]he primary purpose of the unfair competition law ... is to protect the public from unscrupulous business practices." *Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy,* 4 Cal. App. 4th 963, 975 (1992); *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009).  The UCL imposes strict liability on anyone who violates its prohibitions and the "scope of the UCL is quite broad." *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1471 (2006); *see also Cortez v. Purolator Air Filtration*

- 4 -

*Prods. Co.*, 23 Cal. 4th 163, 181 (2000) ("[P]laintiff need not show that a UCL defendant intended to injure anyone through its unfair or unlawful conduct.").

In order to prove a violation of the UCL, a plaintiff must prove that: (1) the defendant engaged in a business act or practice that was either unlawful, unfair, or fraudulent; or (2) engaged in advertising that was unfair, deceptive, untrue, or misleading. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1999).

An "unlawful" business act or practice includes "any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Super. Ct*., 27 Cal. App. 4th 832, 838-39 (Cal. Ct. App. 1994).

In order to determine whether a business act or practice is "unfair," courts utilize a balancing test. *Klein v. Earth Elements Inc.*, 59 Cal. App. 4th 965, 969 (Cal. Ct. App. 1997). Under the balancing test, a business act or practice is unfair if the harm to the victims outweighs the utility of the act. *Id.*

A "fraudulent" business act or practice means any business act or practice that is likely to deceive members of the public. *Klein*, 59 Cal. App. 4th at 970.

A UCL claim for unfair, deceptive, untrue, or misleading advertising may be based on representations to the public which are: (1) untrue; (2) accurate on some level, but nonetheless tend to mislead or deceive; and (3) perfectly true statements couched in such a manner that they is likely to mislead or deceive consumers, such as by failure to disclose other relevant information. *Paduano v. Am. Honda Motor Co., Inc.*, 169 Cal. App. 4th 1453, 1469 (Cal. Ct. App. 2009); *see also Tobacco II*, 46 Cal. 4th at 312 (liability under the UCL rests on whether the public is "likely to be deceived," which is determined by the effect the advertisement would have on "the reasonable consumer").

## B.     The Contours of a CLRA Claim

Plaintiff also alleges that Defendant violated the CLRA.  The CLRA is violated "in a transaction intended to result or which results in the sale or lease of goods or services . . . ."  Cal. Civ. Code §1770(a).  As explained by the California Supreme Court, one who bought the subject

product is entitled to recovery if the defendant violated the CLRA. *Kagan v. Gibraltar Sav. & Loan Ass'n*, 35 Cal. 3d 582, 593, 200 Cal. Rptr. 38 (1984).

**III.   DEFENDANT'S FAILED REQUEST FOR DISMISSAL UNDER RULE 12(b)(6)**

**A.   Standard of Review**

In *Broomfield*, Judge Freeman articulated the standard of review for a motion to dismiss under Rule 12(b)(6) as follows:

> A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim. When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. However, the Court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. While a complaint need not contain detailed factual allegations, it must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim is facially plausible when it allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.
>
> On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. However, under the incorporation by reference doctrine, the Court also may consider documents which are referenced extensively in the complaint and which are accepted by all parties as authentic.

*Broomfield*, 2017 WL 3838453, at *3 (internal citations and quotations omitted).

As explained below, Defendant does not meet this standard for dismissal.

**B.   There Are Actionable Misrepresentations and Omissions under the UCL and the CLRA**

Defendant contends that Plaintiff does not state a claim under the UCL nor the CLRA because: "(1) he has not identified any misrepresentations, and (2) his claims are all based on the same defective premise – that he and reasonable consumers were misled into believing 21st Amendment beers were brewed exclusively in California even though nothing on the packaging states this and 21st Amendment's website even directly refutes this." [Dkt. No. 17, at p. 13]. That is the exact same argument Judge Freeman rejected in *Broomfield*, where the plaintiff

- 6 -

1   alleged UCL and CLRA claims regarding false Hawaii-origin beer advertising.    *Broomfield*,

2   2017 WL 3838453, at \*6-\*7.  This Court should reject it here as well.

3          **1.**      **Plaintiff Expressly Alleges that Defendant Falsely Portrays its**

4                    **Beer as Being Exclusively Brewed in the Bay Area**

5       Plaintiff alleges that Defendant portrays itself as somehow being a back-to-roots, Bay

6   Area brewery.  [Dkt. No. 1, ¶¶1, 6-11].  Plaintiff alleges that Defendant does this through a map

7   of the Bay Area with an "x" marked on it and the statement on the beer cans, "Brewed & Canned

8   by 21st Amendment Brewery, San Leandro, CA."    [Dkt. No. 1, ¶¶1, 6-11].    The map on

9   Defendant's product packaging appears as follows:





[Dkt. No. 1, pg. 4]. Plaintiff also alleges that Defendant reinforces its local brewery advertising through statements on its website.  [Dkt. No. 1, ¶¶1, 6-11].  Plaintiff further alleges that each of the cans purchased by Plaintiff states that the beer is "Brewed & Canned by 21st Amendment Brewery, San Leandro, CA." [Dkt. No. 1, ¶10].  Thus, Plaintiff alleges that Defendant creates the impression in the minds of consumers that the beer is exclusively brewed in the Bay Area of California, when (as Defendant even acknowledges), that is not true.  [Dkt. No. 1, ¶¶1, 6-11]. Defendant's beer is also brewed in Minnesota. [Dkt. No. 1, ¶¶1, 6-11].

2.      **Judge Freeman's Analysis in *Broomfield*, Which Has Nearly-Identical Facts, Is Instructive as to Why Plaintiff's Allegations Here Are Sufficient to State a Cause of Action for False Advertising Under the UCL and CLRA**

In *Broomfield*, the plaintiffs alleged that the defendant's Kona Beer was falsely advertised as being exclusively brewed in Hawaii, which is nearly identical to what Plaintiff is alleging here. *Broomfield*, 2017 WL 3838453, at *6-*7.  Judge Freeman's analysis in that case should be a guide for this Court in rejecting Defendant's motion to dismiss here.

a.  **This Court Must Employ the Reasonable Consumer Test: Would a Reasonable Consumer Believe that Defendant' Beer Products Are Exclusively Brewed in the Bay Area?**

Judge Freeman explained that, on a motion to dismiss a false advertising case brought under the UCL and CLRA, the Court must employ the reasonable consumer test:

> Under the reasonable consumer standard, Plaintiffs must allege facts to show that the alleged misrepresentations are "likely to deceive" reasonable consumers. Because the "reasonable consumer" inquiry is an objective standard, claims may be dismissed as a matter of law where an alleged statement amounts to "mere puffery" or "in the context, is such that no reasonable consumer could be misled" in the manner claimed by the plaintiff.

*Broomfield*, 2017 WL 3838453, at *5 (internal citations and quotations omitted).

In *Broomfield*, the issue was whether a reasonable consumer would be deceived into believing that Kona Beer was exclusively brewed in Hawaii.  *Broomfield*, 2017 WL 3838453, at *6-*7 Thus, here, the issue is whether a reasonable consumer is led to believe that Defendant's beer products are exclusively brewed in the Bay Area, as Plaintiff alleges.

b.  **At this Pleading Stage, this Court's Objective Application of the Reasonable Consumer Test Requires this Court to Find that Plaintiff Has Set Forth Plausible Allegations of False Advertising**

Judge Freeman explained how to use the reasonable consumer test at the pleading stage, noting that it is an objective test.  *Broomfield*, 2017 WL 3838453, at *5.  Thus, under the reasonable consumer test, Judge Freeman detailed why it is generally inappropriate for courts to make factual determinations about what reasonable consumer believe at the pleading stage:

> Courts have recognized that the deceptive nature of a business practice under California's consumer protection statutes is usually a question of fact that is inappropriate for decision on demurrer or a motion to dismiss. *See Dumas v. Diageo PLC*, No. 15-cv-1681, 2016 WL 1367511, at *3 (S.D. Cal. April 6, 2016) (citing *Williams*, 552 F.3d at 938); s*ee also Linear Technology Corp. v. Applied Materials, Inc*., 152 Cal. App. 4th 115, 134-35 (2007) ("Whether a practice is

- 9 -

deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer.") (internal citations and quotation omitted). Courts granting motions to dismiss under the reasonable consumer test are upheld in "rare situations." *Williams*, 552 F.3d at 938.

*Broomfield*, 2017 WL 3838453, at *5 (internal citations and quotations omitted).

Ultimately, Judge Freeman found that in applying the reasonable consumer test, it was inappropriate to dismiss the UCL and CLRA false origin claims regarding the advertising of the origin of the Kona beer.  Judge Freeman held:

> [T]he Court finds that the Hawaiian address, the map of Hawaii identifying Kona's brewery on the Big Island, and the statement "visit our brewery and pubs whenever you are in Hawaii," are not mere puffery but are specific and measurable representations of fact that could deceive a reasonable consumer into believing that the six- and twelve-packs of Kona beer were brewed in Hawaii. . . . These representations go beyond those held to be non-actionable in Dumas, and they do more than evoke the "spirit" of Hawaii or indicate that the beer is "Hawaiian-style." Considered together in context, these statements and images amount to specific and measurable representations that could deceive consumers into believing that they were purchasing beer made in Kona, Hawaii at the specific brewery location listed and depicted on the package.

*Broomfield*, 2017 WL 3838453, at *6-*7.  That is exactly the same analysis this Court should have of the reasonable consumer's reaction to Defendant's advertising of the Bay Area origin of its beer products.

As in *Broomfield*, this Court should consider the "context" of Defendant's advertising, namely, here: (a) the fact that the product itself contains a map of the Bay Area with an "x" marked on it, (b) the fact that the beer cans themselves also contains the statement, "Brewed & Canned by 21st Amendment Brewery, San Leandro, CA," and, (c) the statements on Defendant's website.   In this "context," this Court should be compelled to conclude that Defendant's advertising "could deceive consumers into believing that they were purchasing beer made in [the Bay Area] at the specific brewery location listed and depicted on the package."  *Broomfield*, 2017 WL 3838453, at *6-*7. *See also Marty v. Anheuser-Busch Cos., LLC*, 43 F. Supp. 3d 1333, 1341 (S.D. Fla. 2014) ("In sum, the undersigned finds that the 'Product of USA' disclaimer on the label and the statement 'BRAUEREI BECK & CO., BECK'S © BEER, ST. LOUIS, MO'

underneath the carton do not warrant the dismissal of the plaintiffs' state law consumer protection claims.").

In so concluding, this Court should deny Defendant's motions to dismiss Plaintiff's UCL and CLRA claims and find that Plaintiff has set forth plausible allegations of false advertising at this pleading stage.

> **3.      The Beer Cases Defendant Cites Have No Bearing Here, Because those Cases Did Not Involve Anything Like the Deceptive "X" Marks the Spot Map of the Bay Area on the Product Packaging and the False Statements on the Beer Cans, "Brewed & Canned by 21st Amendment Brewery, San Leandro, CA."**

This Court should reject Defendant's reliance on *Parent v. MillerCoors LLC,* No. 3:15-CV-1204-GPCWVG, 2016 WL 3348818 (S.D. Cal. June 16, 2016),  *Bowring v. Sapporo U.S.A., Inc*., 234 F. Supp. 3d 386 (E.D.N.Y. 2017), and *Dumas v. Diageo PLC*, No. 15cv1681 BTM (BLM), 2016 WL 1367511 (S.D. Cal. Apr. 6, 2016).

In *Parent*, there was no representation on the package that the beer was brewed exclusively at a specific Blue Moon brewery. 2016 WL 3348818, at *5-*7.  In *Bowring*, the defendant actually disclosed that its products were brewed "either Wisconsin, USA or Ontario, Canada on its labels." 234 F. Supp. 3d at 391.  And in *Dumas*, the packaging clearly stated that the beer was "Brewed & bottled by Red Stripe Beer Company Latrobe, PA." 2016 WL 1367511, at 3.

Herein in contrast to each of those cases, there an actual, falsifiable signal as to where Defendant's beer was made.  There is literally a map of the Bay Area with an "x" marked on it and the statement on Defendant's beer cans, "Brewed & Canned by 21st Amendment Brewery, San Leandro, CA." It is hard to get more specific than a map with an "x" marked on it and a statement on the beer cans that the beer is brewed and canned in that exact spot. That is false depiction of where the beer is exclusively brewed, and distinguishes this case from the advertising at issue in the cases Defendant cites.  Moreover, as stated above, Judge Freeman also distinguished *Bowring* and *Dumas* in its analysis. *Broomfield*, 2017 WL 3838453, at *5-*8.

- 11 -

**C.      There Is No Preemption Nor Safe Harbor Regarding Defendant's False Advertising**

Defendant contends that Plaintiff's claims are somehow preempted by 27 CFR §7.25(a)(1), which provides:

(a)Domestic malt beverages.

(1) On labels of containers of domestic malt beverages there shall be stated the name of the bottler or packer and the place where bottled or packed. The bottler's or packer's principal place of business may be shown in lieu of the actual place where bottled or packed if the address shown is a location where bottling or packing operation takes place. The appropriate TTB officer may disapprove the listing of a principal place of business if its use would create a false or misleading impression as to the geographic origin of the beer.

*Id.*

Defendant provides no case authority for the proposition that 27 CFR §7.25(a)(1) allows Defendant a safe harbor to have a false advertising campaign that falsely depicts to the consumers that its beer is exclusively brewed in the Bay Area, when the beer is also brewed in Minnesota.   For example, Defendant provides no authority that the federal regulation allows Defendant to adorn its beer products with the following map of the Bay Area with an "x" marked on them ***and make the statement on its beer cans, "Brewed & Canned by 21st Amendment Brewery, San Leandro, CA,"*** when its beer products are not exclusively brewed in the Bay Area:

1
2
3
4
5
6
7
8
9
10
11
12
13



14
15
16
17
18
19
20
21
22
23
24



25

Furthermore, at this pleading stage, because there are plausible claims for false

26

advertising under the UCL and the CLRA, this Court cannot, as a matter of law, find that 27

27

CFR §7.25(a)(1) bars Plaintiff's claims. *See*, *e.g.*, *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144,

28

1163 (2000) ("Authorization of avoidable charges for optional services hardly amounts to permission to mislead customers about such charges."); *Carney v. Verizon Wireless Telecom, Inc.*, 2010 WL 1947635, at *6 (S.D. Cal. May 13, 2010) (inaccurate representations regarding otherwise lawful collection of sale tax was not protected by the safe harbor doctrine); *Hofmann v. Fifth Generation, Inc.*, No. 14-cv-2569-JM-LB, 2015 WL5440330, at *7 (S.D. Cal. Mar. 18, 2015) (no regulation specifically authorized the use of "homemade" on the vodka's label, and that it was "not clear that such representations are necessarily within the [] regulatory purview.").

Indeed, the Defendant's safe harbor arguments incorporate matters beyond the Plaintiff's complaint that are inappropriate for a motion to dismiss.  *See, e.g.*, *Nowrouzi v. Maker's Mark Distillery, Inc.*, No. 14CV2885 JAH, 2015 WL 4523551, at *4–*5 (S.D. Cal. Jul. 27, 2015) (in assessing whether there was safe harbor for the term "handmade," the court stated that it was "limited to considering the allegations set forth in the complaint.").

To be sure, the United States Supreme Court has repeatedly instructed that there is a strong presumption against preemption. *See, e.g.*, *Wyeth v. Levine*, 555 U.S. 555, 129 S. Ct. 1187, 1194–95 (2009). "In areas of traditional state regulation, [a court must] assume that a federal statute has not supplanted state law unless Congress has made such an intention clear and manifest." *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005).  The Federal regulation Defendant cites, 27 CFR §7.25(a)(1), is hardly "clear and manifest" that Congress means to allow Defendant to package its beer products with an "X" marks the spot map of the Bay Area ***and the statement on its beer cans, "Brewed & Canned by 21st Amendment Brewery, San Leandro, CA," when Defendant's products are not exclusively brewed in the Bay Area***. Stated otherwise: the overall advertising campaign of Defendant falsely depicting its beer as being exclusively brewed in the Bay Area is at issue, which is something that, at this stage, this Court cannot find is  "clearly and manifestly" blessed by the federal regulation.

- 14 -

### D.   Defendant's Argument Regarding the CLRA Demand Letter Has No Merit

Defendant contends that Plaintiff's pre-lawsuit demand letter didn't sufficiently inform Defendant of its misconduct such that this Court should dismiss Plaintiff's CLRA claims. Defendant's argument is specious.

Plaintiff's letter specifically informed Defendant that its beer products were falsely advertised as "being brewed in San Leandro, California when in fact said products are brewed in Minnesota." [Dkt. No. 18-1, pg. 33 of 41].  Plaintiff went on to demand that Defendant stop advertising that it beer is exclusively brewed in the Bay Area. *Id*.  And, in fact and in direct response to this letter, Defendant has started to take corrective action by changing its labeling practices. Thus, it is disingenuous for Defendant to somehow contend that it had no idea what Plaintiff was talking about in the pre-suit demand letter.  Defendant has already started trying to fix the false advertising problem identified in Plaintiff's pre-lawsuit demand letter through labelling changes.

For those reasons, Defendant misplaces reliance on *Ruszecki v. Nelson Bach USA Ltd.*, No. 12–cv–495–L(NLS) 2015 WL 6750980, at *1 (S.D. Cal. June 25, 2015).  In *Ruszecki*, the plaintiff added false advertising theories that were not in the initial CLRA demand letter. *Id*. at *6.  That is not the case here.  Here, Plaintiff told Defendant that it was falsely advertising the Bay Area as the exclusive brewing origin of its beer.  Plaintiff sued Defendant on that exact theory. And Defendant understood exactly what Plaintiff was alleging since Defendant has now started to attempt to correct the problem.

Thus, this Court should find that Plaintiff's pre-lawsuit CLRA demand letter was proper.

### E.   Defendant's "Standing" Argument Has No Merit

Defendant contends that Plaintiff has no standing to sue to stop Defendant from false advertising.  This Court should not accept the argument for many reasons.

1.     **The Integrity of Our Current Civilization Depends Upon Allowing Consumers to Come into Court to Stop False Advertising**

False consumer product advertising is not and has never been constitutionally protected. *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 771 (1976) ("Untruthful speech, commercial or otherwise, has never been protected for its own sake"); *Gertz v. Robert Welch*, 418 U.S. 323, 340 (1974) ("But there is no constitutional value in false statements of fact. Neither the intentional lie nor the careless error materially advances society's interest in 'uninhibited, robust, and wide-open' debate on public issues.").

Thus, states like California appropriately enact laws like the UCL and the CLRA to stop false advertising. *Bolger v. Youngs Drug Prods. Corp*., 463 U.S. 60, 69 (1983) ("The State may deal effectively with false, deceptive, or misleading sales techniques.").

The broad remedial purposes of California's consumer protection laws define their uniquely potent character. *See, e.g.*, *Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy*, 4 Cal. App. 4th 963, 975 (1992) ("[T]he primary purpose of the [UCL] . . . is to protect the public from unscrupulous business practices."); *In re Tobacco II Cases*, 207 P.3d 20, 30 (Cal. 2009) ("[C]onsumer class actions and representative UCL actions serve important roles in the enforcement of consumers' rights.") (internal citation omitted).

Limiting injunctive relief for only those future consumers who do not yet know they have been deceived, as Defendant desires, is a fallacy. None of those future consumers will ever sue because they don't know they are the victims of lies. *See, e.g.*, *Henderson v. Gruma Corp*., No. CV 10–04173 AHM (AJWx), 2011 WL 1362188, at *8 (C.D. Cal. Apr. 11, 2011) ("While Plaintiffs may not purchase the same [] products as they purchased during the class period, because they are now aware of the true content of the products, to prevent them from bringing suit on behalf of a class in federal court would surely thwart the objective of California's consumer protection laws.").

And the moment those consumers do in fact realize they are being lied to and seek relief from an Article III court on behalf of similarly-situated consumers, Defendant would require the

courthouse doors to shut in their faces.  Thus, if this Court sees the issue of standing like Defendant does, consumers cannot use federal courts to stop false advertising.  And that will destroy the integrity of our current civilization.

Our federal courts were created to, *inter alia*, adjudicate "controversies."  U.S. Const. Art. III, §2. Without a court system that actually does, in fact, adjudicate "controversies," like ongoing false consumer product advertising, we will descend into a dystopic world of self-help chaos:

> To permit every lawless capitalist, every law-defying corporation, to take any action, no matter how iniquitous, in the effort to secure an improper profit and to build up privilege, would be ruinous to the Republic and would mark the abandonment of the effort to secure in the industrial world the spirit of democratic fair dealing.

(President Theodore Roosevelt, Eighth State of the Union Address, Dec. 8, 1908).

Thus, this Court should find that Plaintiff has standing to seek injunctive relief. Relatedly, Defendant also does not properly acknowledge that Plaintiff specifically alleges that he was harmed by paying for a falsely-advertised product he would not have otherwise purchased, which is sufficient injury to state a claim. *Kwikset*, 246 P.3d at 877 ("That increment, the extra money paid, is economic injury and affords the consumer standing to sue."); *see also Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1218 (C.D. Cal. 2012) ("Ms. Stanwood alleges that she purchased a number of Mary Kay products that she otherwise would not have, including "Concealer Beige 2, Mascara Waterproof Black, Mineral Eye Colors, Compacts and Brushes, and After Sun Replenishing Gel." (SAC ¶ 5.) This is a sufficient injury for standing under the UCL, . . . and under Article III.").

### 2.   Defendant's Standing Argument Is Not Procedurally Proper, Especially Since it Is a Thinly-Veiled Attack on Class Certification

Whether Plaintiff has Article III standing to pursue the injunctive relief component of his claims is not appropriate on a motion to dismiss. *See*, *e.g.*, *Clancy v. The Bromley Tea Company*, 308 F.R.D. 564, 571 (N.D. Cal. 2013) ("[A]pplying the concept of standing to dismiss proposed

class action allegations is a category mistake.") (Tigar, J.); *Senne v. Kansas City Royals Baseball Corp.*, 114 F.Supp.3d 906, 926-927 (N.D. Cal. 2015) ("[T]he Motion is DENIED without prejudice to raising the issues of class standing and/or the sufficiency of the class claims after class certification or, where applicable, in the context of the class certification determination.").

Moreover, it would not be appropriate for this Court to accept Defendant's position on standing and make what amounts to a class determination without providing Plaintiff the opportunity to present a motion and evidence in support thereof.  *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices and Prods. Liab. Litig.*, 890 F. Supp. 2d 1210, 1224-25 (C.D. Cal. 2011).  As in *Toyota*, here, Defendant "raises factual issues that will require the Court to consider additional evidence beyond the [C]omplaint. . . ., [and t]hese factual questions are more properly resolved on a motion for class certification pursuant to Federal Rule of Civil Procedure 23, . . ."  *Id.*  Indeed, Rule 23 expressly allows class certification orders to be "altered or amended" at any time before judgment.  Fed. R. Civ. P. 23(c)(1)(C).

Thus, this Court should reject Defendant's Article III standing arguments at this stage.

## IV. CONCLUSION

For the reasons stated above and the reasons to be stated *ore tenus* and in other submissions, this Court should summarily deny Defendant's motion to dismiss.

DATED: September 27, 2017

Respectfully submitted,


/s/ Cullin O'Brien
Cullin O'Brien
Counsel for Plaintiff and Putative Class

- 18 -