UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDAN PEACOCK,<br>    Plaintiff,<br>v.<br>THE 21ST AMENDMENT BREWERY CAFE, LLC,<br>    Defendant. | Case No. 17-cv-01918-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br>Re: ECF No. 17 |

Before the Court is Defendant The 21st Amendment Brewery Cafe, LLC's ("21st Amendment") Motion to Dismiss Plaintiff Brendan Peacock's claims against it. ECF No. 17. The Court will grant the motion in part and deny it in part.

## I. BACKGROUND

In this false advertising action, Plaintiff Brendan Peacock alleges that 21st Amendment's packaging and website led consumers to believe that its beer is brewed exclusively in the San Francisco Bay Area, when in fact some of it is brewed in Minnesota. ECF No. 1, Class Action Complaint ("Complaint") ¶ 1.

In July 2016, Peacock purchased packages of two different 21st Amendment brand beers, "Brew Free! Or Die IPA" and "Hell or High Watermelon Wheat Beer," from two different stores in Sacramento, California. Id. ¶ 10. Peacock claims that before he bought this beer, he was "exposed to Defendant's marketing messaging and impressions that the beer is exclusively brewed in the Bay Area of California." Id. He alleges the following specific misrepresentations: (1) the beer cartons contained a map of the Bay Area "with an 'X' designating where the 'brewery' is located"; (2) 21st Amendment's website contained an origin statement describing the brewery's beginning in San Francisco; and (3) the label on the cans stated "Brewed & Canned by 21st

1  Amendment Brewery, San Leandro, CA." Id. ¶¶ 7, 10. The particular cans of beer purchased by Peacock were actually brewed in Minnesota. Id. ¶ 11. Peacock claims that he "purchased the beer because of and in reliance on" the representations made by 21st Amendment. Id. Moreover, he paid a premium price for beer that he would not have purchased to begin with had he known it was not exclusively brewed in California. Id. Peacock alleges that he suffered harm as a result of 21st Amendment's "false, deceptive, and misleading" marketing. Id. ¶¶ 9, 11.

On April 6, 2017, Peacock brought this action against 21st Amendment for false advertising pursuant to the California Consumers Legal Remedies Act ("CLRA") and California's Unfair Competition Law ("UCL"). See ECF No. 1. 21st Amendment filed a motion to dismiss on July 31, 2017. See ECF No. 17. Peacock then filed a response on September 27, 2017. See ECF No. 39. 21st Amendment filed a brief in support of its motion on October 11, 2017. See ECF No. 40. On October 23, 2017, Peacock filed a notice of supplemental authority. See ECF No. 43. 21st Amendment filed its response to Peacock's notice of supplemental authority on October 25, 2017. See ECF No. 46.

## II.  LEGAL STANDARD

On a motion to dismiss, courts must proceed "on the assumption that all the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. "To be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011), cert. denied, 132 S. Ct. 2101 (2012). "The factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Id. To survive a motion to dismiss, a pleading must allege "enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the

2

1 allegations. Twombly, 550 U.S. at 556.

**III. REQUEST FOR JUDICIAL NOTICE**

Before addressing 21st Amendment's motion to dismiss, the Court addresses 21st Amendment's unopposed Requests for Judicial Notice ("First RJN" and "Second RJN"). See ECF Nos. 18, 41.

21st Amendment asks the Court to take judicial notice of the following documents referenced in the complaint: (A) an image of the complete packaging for "Brew Free! or Die IPA"; (B) images of the complete packaging for "Hell or High Watermelon Wheat Beer"; (C) an excerpt from Defendant's website, http://21st-amendment.com/; and (G) a letter from Plaintiff's counsel to Nicolas Freccia re: Notice and Demand Pursuant to California Civil Code § 1782(a), dated October 31, 2016. ECF No. 18-1 at 2, 4-5, 7-12, 33.

"Although generally the scope of review on a motion to dismiss for failure to state a claim is limited to the Complaint, a court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010) (internal quotation marks and citations omitted). Exhibits A, B, C, and G are referenced in the complaint and are central to Peacock's claim, and Peacock does not question their authenticity. See ECF No. 1 ¶¶ 7-8, 10, 34. Therefore, the Court takes judicial notice of Exhibits A, B, C, and G. However, the Court will not take notice of any disputed facts contained in these documents. Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001).

21st Amendment also requests that the Court take notice of the following exhibits not referenced in the complaint: (L) letter from Defendant's counsel to Plaintiff's counsel re: Notice and Demand Pursuant to California Civil Code § 1782(a), dated November 10, 2016 and (M) e-mail from Plaintiff's counsel to Defendant's counsel re: 21st Amendment Brewery, dated December 11, 2016. ECF No. 41 at 36-37, 39.

The Ninth Circuit has extended the "incorporation by reference" doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the

document to its motion to dismiss, and the parties do not dispute the authenticity of the document. Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005). Peacock's claim depends on the contents of the proffered documents and the parties do not dispute their authenticity. The Court will take notice of Exhibits L and M.

21st Amendment also requests that the Court take judicial notice of the following exhibits not referenced in the complaint: (D) online publications from various websites; (E) image of the complete packaging for "Back in Black"; (F) image of the complete packaging for "Sneak Attack"; (N) image of the packaging for "Down to Earth"; (O) image of the packaging for "Fireside Chat." See ECF No. 18-1 at 14-27, 29, 31; ECF No. 41 at 41, 43.

Courts considering motions to dismiss in products labeling cases often take notice of images depicting the defendant's packaging. See Lam v. General Mills, Inc., 859 F. Supp. 2d 1097, 1100 (N.D. Cal. 2012) (taking judicial notice of examples of food packaging filed with the Court). Further, Courts "may take judicial notice of publications introduced to indicate what was in the public realm at the time, [but] not whether the contents of those articles were in fact true." Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010), cert. denied, 564 U.S. 1037 (2011) (internal quotation marks and citations omitted). Therefore, the Court takes judicial notice of Exhibits E, F, N, and O, which are images of 21st Amendment's product packaging. The Court also takes judicial notice of Exhibit D because it contains copies of online publications available to the public at the time of the alleged misrepresentations; however, the Court takes no notice of whether the facts contained in the publications are accurate.

21st Amendment requests that the Court take judicial notice of the following public court filings: (J) excerpts from the August 3, 2017 hearing transcript of Defendant Craft Brew Alliance, Inc.'s Motion to Dismiss in Broomfield v. Craft Brew Alliance, U.S. District Court, Northern District of California, Case 5:17-cv-01027-BLF and (K) excerpts from the Consolidated Class Action Complaint filed on April 7, 2017 in Broomfield v. Craft Brew Alliance, U.S. District Court, Northern District of California, Case 5:17-cv-01027-BLF, Dkt. No. 15, containing images of Kona Brewing beer packaging. ECF No. 41 at 5-13, 15-34. Under Ninth Circuit law, courts may properly take notice of court orders and other matters of public record. See United States v.

4

Black, 482 F.3d 1035, 1041 (9th Cir. 2007) (noting that a court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (internal quotation marks and citations omitted). Accordingly, the Court takes notice of Exhibits J and K but does not take notice of any disputed facts. See Lee, 250 F.3d at 689-90 (9th Cir. 2001) (courts may not take judicial notice of disputed facts stated in public records).

Finally, 21st Amendment requests that the Court take judicial notice of the following public records and government documents: (H) Certificate of Label Approval for "Brew Free! or Die IPA" issued July 14, 2015 by the Department of the Treasury Alcohol and Tobacco Tax and Trade Bureau; (I) Certificate of Label Approval for "Hell or High Watermelon Wheat Beer" issued July 14, 2015 by the Department of the Treasury Alcohol and Tobacco Tax and Trade Bureau and (P) excerpts from The Beverage Alcohol Manual, Volume 3, published by the Department of the Treasury Alcohol and Tobacco Tax and Trade Bureau. ECF No. 18-1 at 35-37, 39-41; ECF No. 41 at 45-70. Under Federal Rule of Evidence 201, "the court can take judicial notice of [p]ublic records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies." Gerritsen v. Warner Bros. Entm't Inc., 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) (internal quotation marks and citations omitted); see also Daniels-Hall, 629 F.3d at 999 (taking judicial notice of information on the websites of two school districts because they were government entities); Paralyzed Veterans of Am. v. McPherson, No. C 06–4670, 2008 WL 4183981, at *5 (N.D. Cal. Sept. 8, 2008) ("Information on government agency websites has often been treated as properly subject to judicial notice."). Therefore, the Court takes judicial notice of Exhibits H, I, and P because they are public records and government documents available from reliable sources.

The Court takes judicial notice of all of the exhibits contained in 21st Amendment's First RJN and Second RJN.

**IV. DISCUSSION**

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair,

deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.[1] The CLRA proscribes a number of "unfair methods of competition and unfair or deceptive acts or practices by any person in a transaction." Cal. Civ. Code § 1770(a). Specifically, Peacock alleges that 21st Amendment violated the UCL provisions that prohibit "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have," Cal. Civ. Code § 1770(a)(5); "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," Cal. Civ. Code § 1770(a)(7); "[a]dvertising goods or services with intent not to sell them as advertised," Cal. Civ. Code § 1770(a)(9); and "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not." Cal. Civ. Code § 1770(a)(16). See ECF No. 1 ¶ 32.[2] He alleges that this conduct violates each of the UCL's three prongs, because it is unlawful, unfair, and fraudulent.

21st Amendment moves to dismiss the complaint on several grounds. First, 21st Amendment argues that the claims are not plausibly pled as the images and statements on the packaging are "subjective, non-actionable 'puffery.'" ECL No. 17 at 10. Second, 21st Amendment contends that Peacock's UCL claim fails as a matter of law for four reasons: (a) it fails to sufficiently identify which Food and Drug Administration ("FDA") regulations were violated and so fails to meet the minimum pleading standards for fraud; (b) the claim is predicated on California Sherman Law section 110100, which incorporates FDA regulations that do not apply to alcoholic beverages; (c) 21st Amendment's conduct is protected by federal and state statutory safe harbors; and (d) the claim is predicated on a violation of the CLRA that itself is inadequately pled. Id. Third, 21st Amendment argues that Peacock fails to state a claim under the CLRA because he failed to provide the pre-suit notice required by California Civil Code section 1782. Id.

---

[1] The UCL is commonly referred to as having three prongs: "unlawful," "unfair," and "fraudulent." E.g., Vasic v. PatentHealth, L.L.C., 171 F. Supp. 3d 1034, 1042 (S.D. Cal. 2016)

[2] Peacock's complaint incorrectly identifies California Civil Code section 1770(a)(16) as section 1770(a)(6).

Fourth, 21st Amendment argues that Peacock does not have standing to pursue injunctive relief under the UCL or CLRA because he has not alleged an intention to purchase 21st Amendment beer in the future. Id. Fifth, 21st Amendment asserts that Peacock's claim for equitable relief fails because money damages under the UCL provides him with an adequate legal remedy. Id. at 11. Finally, 21st Amendment argues that Peacock lacks standing under the UCL and CLRA to bring a nationwide class action on behalf of anyone in the United States who purchased 21st Amendment beer. Id.

### A. Actionable Misrepresentations and the Reasonable Consumer Test

21st Amendment argues that Peacock's claims under the UCL and the CLRA must be dismissed for failure to state a claim because there are no misrepresentations. ECF No. 17 at 13. 21st Amendment contends that the website is not misleading because it does not state or suggest that 21st Amendment brews its beer exclusively in California. It argues that neither the map on the bottom of the beer carton nor the geographic designation are misrepresentations because neither the map nor the packaging indicate that 21st Amendment beer is brewed exclusively in California. Id. at 13-19. Peacock responds that the Court should consider the "context" of the advertising including: "(a) the fact that the product itself contains a map of the Bay Area with an 'x' marked on it, (b) the fact that the beer cans themselves also contains [sic] the statement, 'Brewed & Canned by 21st Amendment Brewery, San Leandro, CA' and, (c) the statements on Defendant's website." ECF No. 39 at 16.

The CLRA and UCL are both governed by the "reasonable consumer" test, which requires plaintiffs to "show that 'members of the public are likely to be deceived.'" Ebner v. Fresh, Inc., 838 F.3d 958, 965 (9th Cir. 2016) (quoting Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008). To survive a motion to dismiss under the reasonable consumer standard, the plaintiff must plead facts sufficient to show that the "alleged misrepresentations are 'likely to deceive' reasonable consumers." Broomfield v. Craft Brew All., Inc., No. 17-CV-01027-BLF, 2017 WL 3838453, at *5 (N.D. Cal. Sept. 1, 2017) (quoting Freeman v. Time, Inc., 68 F.3d 285, 289 (9th Cir. 1995)). "Courts have recognized that the deceptive nature of a business practice is usually a question of fact that is inappropriate for . . . a motion to dismiss." Broomfield, 2017 WL 3838453,

7

at *5. However, "[c]ourts granting motions to dismiss under the reasonable consumer test are upheld in 'rare situations.'" Id. (quoting Williams, 552 F.3d at 938).

The various statements at issue – website, carton, and can – fare differently under these tests. With regard to the website, Peacock does not plausibly allege that any of the statements made there are misleading. None of the statements suggests that 21st Amendment beer is brewed exclusively in the San Francisco Bay Area, and Peacock does not claim that any of the statements is false. Indeed, the 21st Amendment website affirmatively states that it brews beer in Minnesota. See ECF No. 17 at 15-16; see Parent v. MillerCoors LLC, No. 15-cv-1204, 2016 WL 3348818 (S.D. Cal. June 16, 2016) (finding that an origin video on Blue Moon Brewing Company's website was not actionable because "'the SandLot' brewery was indeed where Blue Moon Belgian White was first produced" and "nowhere in the [video] is it represented that Blue Moon is currently produced *only* out of the SandLot brewery" (emphasis added)). Finally, Peacock does not claim to have seen the website representations before buying his beer. To the extent his complaint rests on statements contained on 21st Amendment's website, those allegations are dismissed without prejudice.

However, Peacock plausibly alleges that the Bay Area map with an "x" marking "The Brewery" is likely to deceive a reasonable consumer. In a recent similar case in this district, plaintiffs alleged that Kona Brewing Company's ("Kona") packaging was "marketed in a manner that [was] intended to mislead reasonable consumers seeking to purchase a Hawaiian-made beer," when in fact the beer was also produced at four mainland locations. Broomfield, 2017 WL 3838453, at *1. Judge Freeman found "that the Hawaiian address, the map of Hawaii identifying Kona's brewery on the Big Island, and the statement 'visit our brewery and pubs whenever you are in Hawaii,' are not mere puffery but are specific and measurable representations of fact that could deceive a reasonable consumer into believing that the six- and twelve-packs of Kona beer were brewed in Hawaii." Id., at *6. 21st Amendment attempts to distinguish this case from Broomfield by pointing out that its packaging, unlike Kona's, does not give a specific street address or extend an invitation to visit the brewery. ECF No. 40 at 6-7. It contends, based on a transcript of a hearing in Kona, that these aspects of Kona's label were the "most compelling"

8

facts in the court's analysis. Id.; see also ECF No. 41 at 8-9. It is almost always a mistake for a litigant to infer what is "most compelling" to a judge based on her comments from the bench; hearings are a forum for wide-ranging discussion and thinking out loud. Presumably, Judge Freeman included whatever she felt to be most important in the written order she subsequently issued. Broomfield, 2017 WL 3838453. In any event, 21st Amendment reads the transcript too selectively. Judge Freeman goes on to say that she distinguished other beer false advertising cases "based on the address and the map" on Kona's label, and that these aspects would allow a reasonable consumer to conclude that Kona's beer was brewed in Hawaii. ECF No. 41 at 11. Similarly here, it would be reasonable for a consumer looking at 21st Amendment's carton map to believe that its beer was brewed in California.[3]

Peacock references the label that reads "Brewed & Canned by 21st Amendment Brewery, San Leandro, CA" in his factual comparison to Broomfield. ECF No. 39 at 16-17. 21st Amendment does not specifically refute that this label is actionable. See ECF No. 17 at 13-19; ECF No. 40 at 5-11. The label alone does not seem likely to deceive a reasonable consumer because a reasonable consumer may assume that the brewery's headquarters are in San Leandro, California, without assuming that every beer is brewed in California. However, even if the label is not an independently actionable misrepresentation, it is helpful to the Court's overall contextual analysis.

Therefore, the Court finds that Peacock has adequately alleged that the map with "The Brewery" marked with an "x" is an actionable misrepresentation. The Court notes, similarly to Judge Freeman, that it does not want this determination to give the impression that Peacock has a

---

[3] Unlike in Broomfield, where all of the bottled and canned beer was brewed outside of Hawaii, some of 21st Amendment's canned beer is in fact brewed in California. See Broomfield, 2017 WL 3838453, at *1; ECF No. 1 ¶ 9 ("As Defendant states, 'If the four digit code [for the beer] starts with an S... [the beer] was brewed in San Leandro.' Otherwise, it is brewed in Minnesota."). This distinction is unimportant, because a reasonable consumer might still believe that the particular cans they are purchasing were brewed in California when they were actually brewed in Minnesota. Also, although the map does not explicitly state that "The Brewery" is the only brewery, the use of the definite article "the" implies that the location marked with the "x" is the only brewing location. Lastly, the map does not identify any other locations as breweries, further implying that the only brewery is located in the Bay Area.

9

particularly compelling argument.[4] However, Peacock has provided sufficient allegations to survive a motion to dismiss for failure to state a claim. 21st Amendment's motion to dismiss on the ground that Peacock has not alleged actionable misrepresentations is denied.

### B. Plaintiff's UCL Claim

21st Amendment argues that Peacock's UCL claim that 21st Amendment's labels are "unlawful" because they violate the California Sherman Food, Drug, and Cosmetic Law section 110100 fails for two reasons: it fails to meet the heightened pleading standard for fraud, and is predicated upon regulations that do not apply to beer. 21st Amendment also argues that the UCL claim in its entirety must be dismissed because it qualifies for a common-law safe harbor. ECF No. 17 at 19-20.

#### 1. Peacock's UCL Claim Under California Sherman Food, Drug, and Cosmetic Law Section 110100

Under the UCL, "[w]here a plaintiff's allegations 'sound in fraud,' a complaint must meet Rule 9(b)'s heightened pleading standard." In re Actimmune Mktg. Litig., No. C 08-02376 MHP, 2010 WL 3463491, at *9 (N.D. Cal. Sept. 1, 2010), aff'd, 464 F. App'x 651 (9th Cir. 2011) (citing Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003)). Federal Rule of Civil Procedure 9(b) requires plaintiffs to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Accordingly, courts can dismiss claims that fail to include "the who, what, when, where, and how" of the purported fraud. Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Vess, 317 F.3d at 1106). "The allegations must be specific enough to give the defendant notice of the particular misconduct alleged so that the defendant may defend against the charge." Clancy v. The Bromley Tea Co., 308 F.R.D. 564, 568 (N.D. Cal. 2013) (citing Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). "Where Plaintiff has alleged a 'unified course of fraudulent conduct,' Rule 9(b)'s particularity requirement applies to the unlawful and unfair prong of the UCL in addition to the above-discussed fraudulent prong." Hadley v. Kellogg Sales Co., 243 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017).

---

[4] During the hearing, Judge Freeman told Plaintiff's counsel the following: "And I don't want anything I say to be confused with me thinking this is a strong case. I think this is a hard case for you, okay." ECF No. 41 at 13.

10

1    21st Amendment directs its heightened pleading challenge to Peacock's claim that 21st Amendment's labels violate section 110100 of the Sherman Law.  The Sherman Law incorporates FDA regulations and adopts them as the laws of California.  <u>Kanfer v. Pharmacare US, Inc.</u>, 142 F. Supp. 3d 1091, 1101 (S.D. Cal. 2015) (citing Cal. Health & Safety Code § 110100(a) ("All food labeling regulations . . . adopted pursuant to the federal act . . . shall be the food labeling regulations of this state.")).  As 21st Amendment notes, "Section 110100 incorporates all of the thousands of federal FDA regulations promulgated pursuant to the federal Food, Drug and Cosmetic Act ("FDCA"), into the Sherman Law. But the Complaint fails to identify which, if any, of these thousands of FDA regulations is allegedly violated." ECF No. 17 at 19.  21st Amendment cites no case to support its argument, but it requires only common sense to conclude that Peacock must identify the FDA regulations he contends were violated to state a claim.  The Court grants 21st Amendment's motion on this basis.

Peacock's Sherman Act allegations suffer from an additional flaw:  he does not explain how the FDA has the authority to regulate beer in the first place.  "The TTB regulates alcoholic beverages.  Beer is an alcoholic beverage . . . .  The Court does not see how Plaintiffs come to the conclusion that the FDA would regulate a product that contains beer."  <u>Cruz v. Anheuser-Busch, LLC</u>, No. CV 14-09670 AB ASX, 2015 WL 3561536, at *3 (C.D. Cal. June 3, 2015)(citation omitted), <u>aff'd sub nom.</u> <u>Cruz v. Anheuser-Busch Companies, LLC</u>, 682 F. App'x 583 (9th Cir. 2017).  The Court grants 21st Amendment's motion on this additional ground.

### 2. Safe Harbor Protection

The California Supreme Court recognizes a safe harbor under the UCL for conduct that is explicitly permitted by "specific legislation," or where the Legislature "considered a situation and concluded no action should lie."  <u>Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.</u>, 20 Cal. 4th 163, 182 (Cal. 1999).  Claims under the CLRA are subject to the same safe harbor.  <u>See Bourgi v. West Covina Motors, Inc.</u>, 166 Cal.App.4th 1649, 83 Cal.Rptr.3d 758, 766 (2008) (finding "the provisions of the CLRA must be read together with the safe harbor provision" of a California statute); <u>Alvarez v. Chevron Corp.</u>, 2009 WL 5552497, No. CV 09-3343-GHK (Cwx), at *6 (C.D. Cal. Sept. 30, 2009) ("As with the UCL, specific legislation on point may create a

'safe harbor' defense to the more general prohibitions of the CLRA."). But the existence of the safe harbor must be clear: "To forestall an action under the unfair competition law, another provision must actually 'bar' the action or clearly permit the conduct. There is a difference between (1) not making an activity unlawful, and (2) making that activity lawful." Cel-Tech, 20 Cal. 4th at 183.

21st Amendment argues that its conduct is protected by this safe harbor exception to California's consumer protection laws because the representations on its package are "allowed or permitted under both state and federal law." ECF No. 17 at 21. It bases this argument on its compliance with federal labeling law pursuant to the Federal Alcohol Administration Act, which is administered by the federal Alcohol and Tobacco Tax and Trade Bureau ("TTB").[5] Id.; see also ECF No. 18-1 at 34-41 (TTB label approvals for "Brew Free! or Die IPA" and "Hell or High Watermelon Wheat Beer").

The TTB does address designation of origin on beer labels. The labels must state "the place where [the beer] is bottled or packed," and"[t]he bottler's or packer's principal place of business may be shown in lieu of the actual place where bottled or packed if the address shown is a location where bottling or packing operation takes place." 27 C.F.R. § 7.25. Furthermore, "[t]he appropriate TTB officer *may* disapprove the listing of a principal place of business if its use would create a false or misleading impression as to the geographic origin of the beer." Id. (emphasis added). But there is nothing in the TTB that would "bar" a claim under the UCL or the CLRA: nothing in the regulatory scheme evinces an intent to occupy the field or limit consumers' remedies, and the regulation is not inconsistent with the UCL or the CLRA. State v. Altus Fin., S.A., 36 Cal. 4th 1284, 1303, 116 P.3d 1175, 1187 (2005) (("[T]he fact that there are alternative remedies under a specific statute does not preclude a UCL remedy, unless the statute itself provides that the remedy is to be exclusive").

The motion to dismiss on the grounds that 21st Amendment has complied with applicable state and federal labeling laws, providing it with a safe harbor, is denied.

---

[5] Specifically, this argument refers to 21st Amendment's use of "Brewed & Canned by 21st Amendment Brewery, San Leandro, CA" on its labels. See ECF No. 40 at 13.

### C. Deficient CLRA Notice

To bring a claim for damages under the CLRA, Peacock must satisfy the notice requirement pursuant to California Civil Code section 1782(a). Section 1782 states, in relevant part:

> Thirty days or more prior to the commencement of *an action for damages* . . . the consumer shall do following: (1) Notify the person . . . of *the particular alleged violations* of Section 1770. (2) Demand that the person correct, repair, replace, or otherwise rectify the goods . . . . The notice shall be in writing and shall be sent by certified or registered mail.

Cal. Civ. Code § 1782 (2017) (emphasis added).

21st Amendment argues that Peacock's CLRA claim must be dismissed as a matter of law because of his failure to comply with these notice requirements. ECF No. 17 at 22. 21st Amendment contends that Peacock's letter, while sent 30 days prior to this action, is "wholly deficient and does not constitute 'notice' under the CLRA." Id. The letter does not identify any of the 23 "particular" violations listed in Cal. Civ. Code section 1770, but instead, simply states that 21st Amendment's false, misleading advertising violated the statute. Id.

Peacock's letter to 21st Amendment states that its purpose is to provide notice pursuant to section 1782 that the brewery violated California Civil Code section 1770. See ECF No. 18-1 at 33. It goes on to inform 21st Amendment of "the false, misleading, and deceptive advertising and sale of certain beer products . . . as being brewed in San Leandro, California, when in fact said products are brewed in Minnesota." Id. The letter ends with Peacock's demand that 21st Amendment "correct, repair, replace, and otherwise rectify the foregoing violations." Id. Peacock does not, however, list any of the specific section violations included in his complaint. Id.; see also ECF No. 1 ¶ 32. In fact, nowhere in the letter does Peacock mention which aspects of the allegedly deceptive advertising he wishes to see changed. ECF No. 18-1 at 33. Less than two weeks later, 21st Amendment sent a letter in response that sought to clarify the violations being alleged. See ECF No. 41 at 36-37. Over one month after this letter was sent, Peacock responded with a very brief email requesting a conference call to discuss the previous correspondence. See Id. at 39. The details of that phone call have not been provided to the Court other than 21st Amendment's statement that the call was when "Plaintiff's counsel first informed Defendant's

1 counsel that the map was the main issue." ECF No. 40 at 16.

21st Amendment argues that identifying particular violations is "important because otherwise a letter recipient may not know how to correct or rectify the goods to comply with the law in the allotted period." ECF No. 17 at 22; see also Outboard Marine Corp. v. Superior Court, 52 Cal.App.3d 30, 40-41 (Cal. Ct. App. 1975). The purpose of this requirement is to "facilitate pre-complaint settlements of consumer actions wherever possible." Outboard Marine, 52 Cal.App.3d at 41.

Peacock's CLRA notice was clearly inadequate. See Romero v. Flowers Bakeries, LLC, No. 14-CV-05189-BLF, 2015 WL 2125004, at *8 (N.D. Cal. May 6, 2015) (holding plaintiff's letter to be deficient because it "merely set[] forth her substantive allegations and invite[d] Defendant to figure out which provisions of the CLRA [were] applicable"); Munning v. Gap, Inc., No. 16-CV-03804-TEH, 2016 WL 6393550, at *4 (N.D. Cal. Oct. 28, 2016) (holding CLRA notice was insufficient because "Plaintiff's letter alleged Defendants' violation of several statutes but failed to specifically identify which provisions of the cited statutes they violated"); Seifi v. Mercedes-Benz USA, LLC, No. C12-5493 TEH, 2013 WL 5568449, at *8 (N.D. Cal. Oct. 9, 2013) (finding that defendant received "sufficient notice of the alleged defects to permit appropriate corrections or replacements" because plaintiff's letter alleged violations of four specific provisions of California Civil Code section 1770 (internal quotation marks and citation omitted)); Colucci v. ZonePerfect Nutrition Co., No. 12-2907-SC, 2012 WL 6737800, at *9 (N.D. Cal. Dec. 28, 2012) (finding sufficient notice when plaintiff's letter notified defendant that the alleged defect was the "use of allegedly synthetic or artificial ingredients in . . . nutrition bars"); In re Easysaver Rewards Litig., 737 F. Supp. 2d 1159, 1179 (S.D. Cal. 2010) (finding sufficient notice where plaintiff alleged misconduct along with "five sub-sections of the CLRA, and . . . [the] specific corrections and remedies" being demanded). As written, 21st Amendment could not have known from the demand letter which provisions of section 1770 it allegedly violated, the specific parts of its "advertising and sale" practices that caused the violations, or what Peacock expected the brewery to do about it.

The CLRA explicitly states that "[t]he notice shall be in writing and shall be sent by

14

certified or registered mail." Cal. Civ. Code § 1782(a). Consequently, even if 21st Amendment was aware of the alleged violations following the phone call, it still never received written notice thirty days prior to Peacock filing the complaint.

The Court will dismiss Peacock's claim with leave to amend. Any of Peacock's UCL claims predicated on the CLRA claim are also dismissed. Should Plaintiff seek to amend his CLRA claim, he must first comply with the CLRA's notice and affidavit requirements. Oxina v. Lands' End, Inc., No. 14-CV-2577-MMA NLS, 2015 WL 4272058, at *3–4 (S.D. Cal. June 19, 2015) (citing Cal. Civ. Code §§ 1780, 1782).

### D. Plaintiff's Standing to Pursue Injunctive Relief

In addition to other remedies, Peacock seeks injunctive relief under the CLRA and the UCL. ECF No. 1 at 10-11. 21st Amendment contends that Peacock lacks such standing because he does not allege that he intends to purchase 21st Amendment brand beers in the future, and thus fails to demonstrate redressability. ECF No. 17 at 25.

It has long been settled that "[t]o seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized . . . actual and imminent. . . [and] fairly traceable to the challenged action of the defendant." Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009). Further, "it must be likely that a favorable judicial decision will prevent or redress the injury." Id.

The Ninth Circuit recently resolved whether "a previously deceived consumer who brings a false advertising claim can allege that her inability to rely on the advertising in the future is an injury sufficient to grant her Article III standing to seek injunctive relief." Davidson v. Kimberly-Clark Corp., No. 15-16173, 2017 WL 4700093, at *7 (9th Cir. Oct. 20, 2017). The Ninth Circuit held that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." Id., at *9 (quoting Summers, 555 U.S. at 493). The threat of future harm may be "the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not

purchase the product although she would like to," or it may be the "consumer's plausible allegations that she might purchase the product in the future" as she may reasonably, but incorrectly, assume the product was improved. Davidson, at *9.

In Davidson, the plaintiff alleged the false advertising of flushable cleansing wipes that were not, in fact, "suitable for disposal down a toilet." Id., at *2. The Ninth Circuit found that the plaintiff adequately alleged that she faced imminent or actual harm because she continued to desire to purchase wipes that are suitable for disposal, would purchase wipes that are suitable for disposal if it were possible, regularly visited stores where the allegedly mislabeled wipes are sold, and was continually presented with the allegedly mislabeled wipes with no way of determining if the labeling was in fact true. Id., at *9.

Here, Peacock alleged that he purchased two different types of 21st Amendment beers on the belief that they were brewed exclusively in California. ECF No. 1 ¶¶ 10-11. Specifically, he states that "had [he] known that Defendant's marketing messages were false, [he] would not have purchased the beer." Id. ¶ 11. He also alleges paying "a price premium for the beer compared to, *inter alia*, other beer and related goods." Id. Unlike the plaintiff in Davidson, however, at no point does Peacock state or even imply any intent or desire to purchase 21st Amendment beers in the future. See ECF No. 1; ECF No. 39; ECF No. 43. Therefore, Peacock has not adequately alleged that he faces an imminent or actual threat of future harm caused by 21st Amendment's false advertising.

Injunctive relief is not available without a showing of an actualized, imminent threat that the same harm will be suffered again. Peacock has made no such showing. Accordingly, 21st Amendment's motion to dismiss Peacock's claim for injunctive relief is granted with leave to amend.

### E. Equitable Relief

In addition to injunctive relief, Peacock also seeks equitable relief in the form of restitution pursuant to his claim for unjust enrichment. ECF No. 1 at 12. 21st Amendment argues that this request is improper as Peacock's claim for damages is an adequate remedy at law. ECF No. 17 at 27. 21st Amendment cites the Rhynes case for the proposition that "a plaintiff seeking equitable

16

relief must establish that there is no adequate remedy at law available." Id.; see also Rhynes v. Stryker Corp., No. 10-5619 SC, 2011 WL 2149095, at *1 (N.D. Cal. May 31, 2011). This argument would be compelling if the Court was not dismissing Peacock's CLRA claims. However, his only remaining claims are under the UCL, which "only provides equitable remedies." Rhynes v. Stryker Corp., 2011 WL 2149095, at *3 (citing Madrid v. Perot Sys. Corp., 130 Cal. App. 4th 440, 451 (Cal. Ct. App. 2005) ("[T]he UCL limits the remedies available for UCL violations to restitution and injunctive relief.")); see also Duttweiler v. Triumph Motorcycles (Am.) Ltd., No. 14-CV-04809-HSG, 2015 WL 4941780, at *8 (N.D. Cal. Aug. 19, 2015) ("Apart from civil penalties . . . the UCL and FAL provide for only equitable relief. "). In any event, because a plaintiff is entitled to plead in the alternative, a claim for injunctive relief "should not be dismissed unless it is insufficient apart from its inconsistency with the other counts." Saidian v. Krispy Kreme Doughnut Corp., No. 216CV08338SVWAFMX, 2017 WL 945083, at *4 (C.D. Cal. Feb. 27, 2017) (dealing with unjust enrichment claim) (quoting Cheatham v. ADT Corp., 161 F. Supp. 3d 815, 832 (D. Ariz. 2016)).

Accordingly, 21st Amendment's motion to dismiss Peacock's claims for equitable relief is denied.

### F. The Nationwide Class

21st Amendment seeks to dismiss Peacock's claims on behalf of all purchasers of 21st Amendment beer for lack of standing. ECF No. 17 at 28. 21st Amendment argues that the class is "overly broad" for the following reasons: (1) Peacock purchased only two types of 21st Amendment beer, which do not have substantially similar packaging to the brewery's other products; (2) Peacock lacks standing to represent purchasers who were already aware that 21st Amendment beer is sometimes brewed in Minnesota; (3) Peacock lacks standing to the extent that some purchasers did not view the map on the cartons or read the origin statements on the website; (4) Peacock cannot represent purchasers of 21st Amendment beer who bought beers that were in fact brewed in San Leandro, California; (5) Peacock has no standing to represent any out-of-state purchasers with regard to his CLRA claims or his UCL claims (to the extent that they rely on the CLRA). Id. at 28-29.

17

There are two competing approaches to the issue of class representative standing at the pleading stage. The standing principle, when applied, holds that a class representative lacks standing to pursue claims on behalf of the entire class if that individual did not suffer injuries "precisely analogous" to the other class members. Newberg on Class Actions § 2:6 (5th ed.). On the other hand, the class certification approach finds that once the named plaintiff establishes individual standing to bring a claim, the court "approach[es] the disjuncture[6] as an issue of class certification, not standing." Id.

This Court adopts the class certification approach. See Clancy, 308 F.R.D. at 571 ("applying the concept of standing to dismiss proposed class action allegations is a category mistake"). Thus, 21st Amendment's motion to dismiss for Peacock's lack of standing to bring claims on behalf of a nationwide class is denied without prejudice. 21st Amendment is free to raise these arguments again at the class certification stage.

**CONCLUSION**

For the aforementioned reasons, 21st Amendment's motion to dismiss is granted in part and denied in part:

1. 21st Amendment's motion to dismiss all of Peacock's claims on the grounds of a failure to allege any actionable misrepresentations is DENIED.

2. 21st Amendment's motion to dismiss Peacock's UCL claims for failure to satisfy the pleading standards for common law fraud is GRANTED with leave to amend to the extent that it (1) is predicated on the CLRA claim, and (2) relies upon California Sherman Law section 110100.

3. 21st Amendment's motion to dismiss on the grounds that its conduct is protected under the safe harbor doctrine is DENIED.

4. 21st Amendment's motion to dismiss Peacock's CLRA claims on the grounds of a failure to provide sufficient notice under California Civil Code section 1782(a) is GRANTED with

---

[6] "Disjuncture" in this instance refers to the fact that, in order to establish standing, the harm suffered by a plaintiff must be redressable by the relief being sought. See Newberg on Class Actions § 2:6 (5th ed.).

18

leave to amend.

5. 21st Amendment's motion to dismiss Peacock's claim for injunctive relief on the grounds that he lacks standing to pursue injunctive relief on behalf of the class is GRANTED with leave to amend.

6. 21st Amendment's motion to dismiss Peacock's claim for equitable relief is DENIED.

7. 21st Amendment's motion to dismiss Peacock's claims on behalf of a nationwide class is DENIED without prejudice.

**IT IS SO ORDERED**.

Dated: January 17, 2018

JON. S. TIGAR
United States District Judge